```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

```
G.E.M.S. PARTNERS LLC, et al.,        Civil Action No. 22-1664
                                             (MEF)(JBC)
        Plaintiffs,

   v.                                   OPINION and ORDER

AMGUARD INSURANCE COMPANY,

        Defendant.
```

**I.  Background**

    **A.  The Facts**

    **B.  Procedural History**

    **C.  The Motion**

    **D.  The Court's Approach**

**II. Legal Principles**

**III. Analysis**

    **A.  The Flood Exclusion**

    **B.  Counterarguments**

        **1.  Villamil**

        **2.  T.H.E. Insurance Company**

    **C.  "Surface Water"**

**IV. Conclusion**

\* \* \*

Certain buildings were damaged during a storm, and the insurer declined to make a requested pay-out.

The buildings' owners sued.

The insurer now moves for summary judgment, arguing mainly that there is no coverage because the damage was caused by a flood.

The motion is denied.

\*   \*   \*

I.  **Background**

   A.  **The Facts**

An insurance contract was signed, see Defendant's Statement of Undisputed Facts ¶ 9, under which an insurance company[1] agreed to cover three neighboring buildings in Union, New Jersey.  See id.; Sipple Certification Exhibit A, Policy Declarations at 2, 5, 6.

Per the contract, the insurer would "pay for . . . damage . . . caused by . . . [w]ater . . . which backs up through or overflows or is otherwise discharged from a sewer[.]"  Sipple Certification Exhibit G, Water Back-Up and Sump Overflow Endorsement at 1.

During a 2021 hurricane, there is evidence that happened.  A plumber inspected the buildings after the storm, and described a "back up" of "sewer . . .  water."  Sipple Certification Exhibit H, Plumbing Analysis Report of Michael Tardio (March 15, 2023) at 2.

Payment was sought under the insurance contract from the insurer, and the insurer declined to pay.  See Defendant's Statement of Undisputed Facts ¶ 17, 19.

   B.  **Procedural History**

The building owners (from here, "the Plaintiffs") sued the insurance company ("the Defendant") in state court, seeking damages.

The case was removed to federal court, and around a year later it was reassigned to the undersigned.  Settlement efforts were undertaken but failed, and the Defendant then moved for summary judgment.

The motion is now before the Court.

---

[1]  AmGUARD Insurance Company.  See Complaint ¶ 8.

    **C.**    **The Motion**

The Defendant's core summary judgment argument: any backup of sewer water was caused, at least in part, by the rain that lashed Union during the hurricane and then overwhelmed the city's drainage system. See Defendant's Summary Judgment Brief at 5-6. This amounted to a flood, the argument goes, and sewage backup caused by a flood is not covered. See id. at 8-9.

The basis for this argument is a flood exclusion ("Flood Exclusion") in the insurance contract:

> THIS IS NOT FLOOD INSURANCE. We will not pay for loss or damage from water or other materials that back up or overflow from any sewer, drain or sump that itself is caused, directly or indirectly, in whole or in part, by any flood. Flood means the overflow of surface water, waves, tides, tidal waves, streams, or other bodies of water, or their spray, all whether driven by wind or not.

Sipple Certification Exhibit G, Water Back-Up and Sump Overflow Endorsement at 1.[2]

    **D.**    **The Court's Approach**

Evaluating the Defendant's summary judgment motion requires the Court to interpret the Flood Exclusion, to determine whether it applies here.

To do so, the Court first sets out the general legal principles that control interpretation of the Exclusion. See Part II.

The Court then interprets the Exclusion, concluding that it does not apply here, see Parts III.A and III.C, and that the main counterarguments advanced by the Defendant do not alter this conclusion, see Part III.B.

Accordingly, the Defendant's summary judgment motion is denied. See Part IV.

---

[2] The Defendant quotes a part of the insurance contract that changed the definition of "water" as used in other parts of the contract. See Defendant's Summary Judgment Brief at 4. But the parties make no argument from this changed definition. Therefore, the Court does not consider it. See, e.g., Wu v. GSX Techedu Inc., 2024 WL 3163219, at *25 (D.N.J. June 25, 2024).

## II. Legal Principles

Because the parties' briefs assume that New Jersey law applies, it does. See Navigators Specialty Ins. Co. v. Citizens Ins. Co. of Am., 2024 WL 3287848, at *2 (D.N.J. July 3, 2024) (collecting cases).

When applying New Jersey law, "the decisions of the [New Jersey] Supreme Court are the authoritative source." Spence v. ESAB Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010).

But as to interpreting the language of the Flood Exclusion, the New Jersey Supreme Court has not issued a "controlling decision." Popa v. Harriet Carter Gifts, Inc., 52 F.4th 121, 125 (3d Cir. 2022).

Accordingly, this Court must "predict" what the Supreme Court of New Jersey's interpretation of the relevant contractual language would be. See Spence, 623 F.3d at 216.

To make this prediction, a range of sources may be consulted. See, e.g., Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000) (listing sources); McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 662-63 (3d Cir. 1980) (listing more sources). These include decisions of New Jersey intermediate appellate courts as to the meaning of state law. See Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A., 98 F.4th 463, 468-69 (3d Cir. 2024).

Moreover, a federal court aiming to predict how a state supreme court will ultimately interpret a legal document (here, an insurance contract) should generally analyze the document "using the same interpretative approach that the state supreme court applies[.]" Navigators Specialty Ins. Co., 2024 WL 3287848, at *7. This is to increase the likelihood of an accurate prediction as to how the state supreme court would rule. See id. at *8.

## III. Analysis

### A. The Flood Exclusion

The Court predicts that the New Jersey Supreme Court would hold that for purposes of the Flood Exclusion here, "flood" means "the overflow of . . . a bod[y] of water."

4

This interpretation does not cover rain hitting city streets during a storm and overwhelming municipal sewers --- but not causing a body of water to overflow.

That, though, is all that the undisputed evidence in this case shows.

Therefore, on the Court's "overflow" interpretation, the Flood Exclusion is not in play here --- and, accordingly, the Defendant is not entitled to summary judgment.

\*   \*   \*

There are three basic reasons for the Court's prediction that "flood," as used in the Flood Exclusion, would be interpreted by the New Jersey Supreme Court to mean an "overflow of . . . a bod[y] of water."

First, under New Jersey law, there is an established "interpretive approach" in this area. See generally Navigators Specialty Ins. Co., 2024 WL 3287848, at \*8. Namely: insurance contracts are given their "plain, ordinary meaning." Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001).

In turn, the "plain, ordinary meaning" of "flood" is an "overflow of . . . a bod[y] of water." See Flood, Meriam-Webster.com, https://www.merriam-webster.com/dictionary/flood (last visited July 25, 2024) (first definition: "a rising and overflowing of a body of water"); 5 Oxford English Dictionary 1075-76 (2d ed. 1989) (first definition: "[a]n overflowing or irruption of a great body of water").[3]

Second, an "overflow of a body of water" is the typical understanding of what a "flood" means in the context of insurance contracts. See 11 Couch on Insurance § 153:54, Flood ("[a] flood is generally defined as the overflow of some body of

---

[3] To discern "the plain, ordinary meaning" of insurance contract terms, New Jersey courts routinely look to on dictionary definitions. See, e.g., On-Target Staffing, LLC v. Zurich Am. Ins. Co., 2024 WL 178215, at \*10 (N.J. Super. Ct. App. Div. Jan. 17, 2024); Boddy v. Cigna Prop. & Cas. Companies, 334 N.J. Super. 649, 657 (N.J. Super. Ct. App. Div. 2000); Daus v. Marble, 270 N.J. Super. 241, 251 (N.J. Super. Ct. App. Div. 1994). And this "interpretive approach" is for the Court here to follow. See generally Navigators Specialty Ins. Co., 2024 WL 3287848, at \*8.

5

water"); cf. 5 Appleman & Appleman, Insurance Law and Practice § 3145 (1970) ("flood waters" are "those waters above the highest line of the ordinary flow of a stream, and generally speaking they have overflowed a river, stream, or natural water course and have formed a continuous body with the water flowing in the ordinary channel").

This "general[]" understanding matters here, because in interpreting insurance contracts one of the New Jersey Supreme Court's core "interpretive approach[es]" is to keep in step with the broader consensus view as to the meaning of a given insurance contract term. See Navigators Specialty Ins. Co., 2024 WL 3287848, at *8. Couch's "general[]" definition of "flood" reflects such a consensus.

Third, a closer look at the definition of "flood," as set out in the Flood Exclusion at issue here, supports the conclusion that the term is best understood as "the overflow of . . . a bod[y] of water."[4]

Per the Flood Exclusion: "Flood means the overflow of surface water, waves, tides, tidal waves, streams, or other bodies of water[.]"  Sipple Certification Exhibit G, Water Back-Up and Sump Overflow Endorsement at 1.

Two aspects of this definition stand out.

The first is the equating of "flood" with an "overflow."  Id. ("[f]lood means [an] overflow").  "[O]verflow" implies a boundary --- water pushes "over" it, and then "flow[s]" beyond it.  When water is behind a boundary, before it "overflows," that is typically (though not always) because it was bounded as part of a body of water.  This is why it is natural to say that a pond or a stream overflows --- each is a body of water.  And that is why it is less natural to say that falling rain overflows.

---

[4]  The New Jersey Supreme Court routinely takes a zoomed-in look at insurance contract language as part of interpreting it.  See Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C., 226 N.J. 403, 415 (2016); Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008); Bd. of Educ. of Borough of Florham Park v. Utica Mut. Ins. Co., 172 N.J. 300, 307 (2002); Zacarias, 168 N.J. at 595.  This, too, is an interpretive approach to be followed here.  See generally Navigators Specialty Ins. Co., 2024 WL 3287848, at *8.

And not only does "overflow" imply, on its own, a body of water --- the definition of flood in the Flood Exclusion here specifically invokes one.  "Flood means the overflow of . . . [a] bod[y] of water[.]"  Id.

A second clarifying aspect of the insurance contract's "flood" definition is its structure.

Recall the definition: "[f]lood means the overflow of surface water, waves, tides, tidal waves, streams, or other bodies of water[.]"  Id. (emphasis added).

The likeliest implication of "other" in this context is that the nouns ("surface water," etc.) that come before the word "other" are examples --- and each example is drawn from the same family of things ("bodies of water") that comes after the word "other."

Because of this, the examples can be pulled out, to generate a simplified definition.  "Flood means the overflow of . . . bodies of water[.]"  Id.

As to why this makes sense, take a similarly-structured sentence: "She sees dogs, cats, bats, and other animals."  Dogs, cats, and bats fit into the overarching category of "other animals," such that it would be accurate (though simplified) to say: "She sees . . . animals."

Moreover, this sentence's structure makes it clear to the reader that the nouns that appear before "other" (dogs, cats, bats) are ones that must be understood to fit into the broader umbrella category ("animals") that comes after "other."  That is why no one would think "bats" here means wooden Louisville Sluggers or aluminum Eastons.  A baseball bat is not a member of the "animals" family, and given the use of the "other" sentence structure --- it must be.

So too here.  A person "sees . . . animals" --- and the ellipses displace the particular examples of such animals that were listed out.  And "flood" means "the overflow of . . . [a] bod[y] of water," and the ellipses push aside the listed examples of "bodies of water."[5]

---

[5]  To be sure, the animals example is an especially strong version of the point being made.  This is because dogs and cats are plainly animals.  When it comes to the insurance contract sentence --- "[f]lood means the overflow of surface water, waves, tides, tidal waves, streams, or other bodies of water" --

In sum: the Court predicts that the New Jersey Supreme Court would interpret "flood," as used in the Flood Exclusion at issue here, as "the overflow of . . . [a] bod[y] of water." This interpretation is consistent with "the plain, ordinary meaning," Zacarias, 168 N.J. at 595, of flood, as reflected in dictionaries. It is consistent with how the term is generally used in insurance contracts. And it is supported by the language of the Flood Exclusion.[6]

In light of this conclusion, the Flood Exclusion does not apply here and the Defendant is therefore not entitled to summary judgment.[7]

---

- things are less clear. A stream is an example of a body of water. And surface water (a lake or a brook, for example, see footnote six) can readily be understood that way, too. But is a wave or a tide a body of water? No. This weakens the point, but not fatally. A wave is not a body of water, but it is one of the basic ways that water "overflow[s]" from a body of water --- and in a sentence about bodies of water overflowing, the difference between the body of water that overflows and how it overflows is not especially telling.

[6] The Flood Exclusion defines a flood as "the overflow of surface water, waves, tides, tidal waves, streams, or other bodies of water, or their spray, all whether driven by wind or not." On the Court's "overflow" interpretation of the Exclusion, "surface water" must be taken as a catch-all term for the various types of on-the-surface "bodies of water" --- a lake, for example, or a brook. This interpretation of "surface water" finds strong support in New Jersey law --- as unpacked below, in Part III.C. And that is one more reason to think the Court's overall interpretation of the Flood Exclusion is the correct one.

[7] The definition of "flood" in the Flood Exclusion does not appear ambiguous. But to the extent it is, ambiguity must be resolved in favor of the "overflow" interpretation, and not a competing interpretation that would allow driving rain of the kind at issue here to be chalked up as a flood. The reason: under New Jersey law, ambiguities are resolved in favor of the insured, see Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 200 (2016); Passaic Valley Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co., 206 N.J. 596, 608 (2011); Pizzullo v. New Jersey Mfrs. Ins. Co., 196 N.J. 251, 270-71 (2008), and in favor of coverage. See Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 273-74 (2001); Villa v.

### B. **Counterarguments**

Against the conclusion set out just above, the Defendant presses two main counterarguments.

#### 1. **Villamil**

The first counterargument: this Court has previously interpreted insurance contract language that is "practically verbatim to the [Flood Exclusion] here" --- and in a way that is at odds with the "overflow" interpretation. See Defendant's Reply Brief at 9.

Villamil v. Sentinel Ins. Co., Ltd., 356 F. Supp. 3d 418 (D.N.J. 2018), it is said, held that for flood exclusion purposes a flood includes not only an overflow of an existing body of water --- but also an accumulation of rain that does not cause such an overflow. See Defendant's Reply Brief at 9-10. That sort of rain accumulation took place here during the hurricane in Union --- and therefore, the argument goes, the Flood Exclusion applies. See id.

But Villamil did not interpret an insurance contract that is "practically verbatim" to the one here.

In Villamil, a flood was said to "include[] the accumulation of surface water, . . . [or the] overflow of streams or other bodies of water[.]" Villamil, 356 F. Supp. at 419-20.[8] This implied that at least two distinct categories of activity could count as a flood and trigger the flood exclusion. An "overflow of . . . bodies of water." And also "the accumulation of surface water" --- presumably including a build-up of fallen rain that does not cause an "overflow."

---

Short, 195 N.J. 15, 23 (2008); President v. Jenkins, 180 N.J. 550, 563 (2004). This is in part because exclusions, like the Flood Exclusion here, are construed narrowly. See Charles Beseler Co. v. O'Gorman & Young, Inc., 188 N.J. 542, 546 (2006); Proformance Ins. Co. v. Jones, 185 N.J. 406, 415 (2005); Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997).

[8] The full passage: "Flood includes the accumulation of surface water, waves, tides, tidal waves, overflow of streams or other bodies of water, or their spray, all whether driven by wind or not that enters the sewer drain system." Villamil, 356 F. Supp. at 420.

9

But in the Flood Exclusion here, "surface water" is not a separate, free-standing category --- an additional sort of activity, besides an "overflow," that can count as a "flood" and bring the Exclusion into play.  Rather, the Flood Exclusion here involves only one category --- a single type of activity (an "overflow of . . . [a] bod[y] of water") that can count as a flood.  And in the context of that single category, "surface water" is best understood not as rain, but rather as a catch-all term for the sorts of "bodies of water" that can "overflow" --- brooks and ponds, for example.  See footnote six.

None of this is abstract.

The flood exclusion in Villamil and the Flood Exclusion here use different language --- and that matters in a practical sense.

During the hurricane in Union, there certainly was an "accumulation of surface water" --- and so a flood exclusion provision like the one in Villamil might well have kicked in.  And if so, there likely would have been no coverage.

But the insurance contract in this case does not have that same Villamil provision.  The Flood Exclusion here, the Court has concluded, is brought to bear only when there is an overflow of a body of water.  There is no evidence that happened during the Union hurricane, and so the Flood Exclusion has no work to do.

This case, in short, might have come out differently under a different insurance contract.  But that has no bearing on how the insurance contact here should be interpreted.  See generally Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010) (in "construing a policy," "courts cannot write" what, to one party, would be "a better policy") (cleaned up).

### 2.   T.H.E. Insurance Company

Take now a second counterargument, that seems to at least be suggested by the Defendant: in T.H.E. Ins. Co. v. Charles Boyer Childrens Tr., 269 F. App'x 220 (3d Cir. 2008), the Third Circuit: (a) applied a flood exclusion, and (b) did so in a way that weighs in favor of the conclusion that a "flood" includes rain that causes damage, even if the rain does not trigger an "overflow" in a body of water.  See Defendant's Reply Brief at 6-7 (citing, among other things, T.H.E. Ins. Co., 269 F. App'x at 222).

10

But to the extent the Defendant is pressing this (a)-and-(b) argument, (a) is not accurate and (b) is not persuasive.

Start with (a).

T.H.E. Ins. Co. is like this case: an insurance dispute focused on damage to property caused by a heavy rainstorm. T.H.E. Ins. Co., 269 F. App'x at 222.

But T.H.E. Ins. Co. did not apply a flood exclusion. As the District Court explained:

> It is doubtful that the event in question would be recognized as a "flood" for purposes of the water exclusion in the [insurance] policy. In this regard, flood waters "are those waters above the highest line of the ordinary flow of a stream, and generally speaking they have overflowed a river, stream, or natural water course and have formed a continuous body with the water flowing in the ordinary channel." Neither party asserts that the water that entered the [insured premises] originated from a waterway. Accordingly, the flood exclusion does not appear to be applicable.

T.H.E. Ins. Co. v. Charles Boyer Children's Tr., 455 F. Supp. 2d 284, 296 (M.D. Pa. 2006) (citation omitted).

In short: a "flood" exclusion was not applied in T.H.E. Ins. Co.[9]

And the reason why not is telling --- because the District Court used a definition of "flood" that is similar to the definition set out by the Court here. Compare id. at 296 (relying on a definition of "flood" focused on an "overflow[]" of a body of water --- "a river, stream, or natural water course") with Part III.A (interpreting the Flood Exclusion in this case as requiring "the overflow of . . . a bod[y] of water").

---

[9] T.H.E. Ins. Co. considered whether a different exclusion applied, a "surface water" exclusion. This is clear from the District Court's opinion, see T.H.E. Ins. Co., 455 F. Supp. 2d at 296, and also from the Third Circuit's. See T.H.E. Ins. Co., 269 F. App'x at 221 (from the opinion's first paragraph: "On appeal, [the insured] contends that an exclusion within its insurance policy for damage caused by 'surface water' should not apply to its claim."); see also id. at 222.

11

T.H.E. Ins. Co. does not undermine the Court's conclusion here. If anything, it supports it.

Turn now to (b), the second part of the Defendant's counterargument.

The Defendant states that "the Third Circuit has defined surface water [in T.H.E. Ins. Co.] as: 'waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence.'" Defendant's Reply Brief at 9 (cleaned up).

The contention seems to be that the Third Circuit "has defined" "surface water" in a certain way --- and so this Court cannot define "flood" in a way that implicitly requires a different definition of "surface water." (Recall that the Court's "overflow" understanding of the Flood Exclusion treats "surface water" as a catch-all term for an on-the-surface body of water, like a lake or a pond, see footnote six; on this understanding, "surface water" is not, as the Third Circuit put it in T.H.E. Ins. Co., "casual or vagrant" water, "following no definite course and having no . . . permanent existence.")

But the Defendant's argument does not work.

To see why, look back to the history of "surface water."

Used as a legal term of art, "surface water" began to make regular appearances in the 19th century, in cases that concerned the duties landowners may owe each other when water runs across one piece of property and onto another. See generally, e.g., Bowlsby v. Speer, 31 N.J.L. 351, 353 (Sup. Ct. 1865) (discussing the common law roots of the doctrine in the United States); see also Cairo, V. & C. Ry. Co. v. Brevoort, 62 F. 129, 134-35 (C.C.D. Ind. 1894) (same, but emphasizing the early English cases).

Those were cases that we would today think of as focused on land-use law. And it was in that context that "surface water" took on the definition the Third Circuit quoted in T.H.E. Ins. Co. See, e.g., Thompson v. New Haven Water Co., 86 Conn. 597 (Conn. 1913)) (a land-use case, defining "surface water" as in T.H.E. Ins. Co. --- as "waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence").

12

Some insurance contracts over the years have made use of the term "surface water" --- and some courts have held that when "surface water" is used without definition in an insurance contract, it should be given essentially the same meaning as those words began to take on in 19th century land-use law. See, e.g., Cap. Mortg. Sols., LLC v. Cincinnati Ins. Co., 674 F. Supp. 3d 392, 397 (E.D. Mich. 2023).

One of the courts that has taken this borrowing approach is the Pennsylvania Supreme Court, construing Pennsylvania law. See Richman v. Home Ins. Co. of N. Y., 172 Pa. Super. 383, 387 (1953).

Come back now to T.H.E. Ins. Co.

When it came to interpreting "surface water" in an insurance contract governed by Pennsylvania law, the Third Circuit in T.H.E. Ins. Co. applied the land-use law understanding of the term. See T.H.E. Ins. Co., 269 F. App'x at 222.

This was not surprising. Under Erie, the Third Circuit was required to follow the Pennsylvania Supreme Court's interpretation of Pennsylvania law, see Spence, 623 F.3d at 216 --- and as noted just above, the Pennsylvania Supreme Court had previously endorsed the borrowing approach, pulling the land-use law understanding of "surface water" into those insurance contracts where that term appears, but is not defined.

This helps to explain why T.H.E. Ins. Co. is not on-point here.

There is no suggestion in T.H.E. Ins. Co. that the Court of Appeals was suggesting that "surface water" must mean the same thing everywhere. No matter whether it appears in its own free-standing exclusion (as in T.H.E. Ins. Co.), or whether it is part of another exclusion (as here). And no matter whether the law being applied is Pennsylvania law (as in T.H.E. Ins. Co., where the Third Circuit followed the Pennsylvania Supreme Court), or the law of another state (as here --- where the relevant state supreme court, New Jersey's, has not yet weighed in).[10]

---

[10] Put differently: T.H.E. Ins. Co. did not suggest it was defining "surface water" as a matter of federal common law. Rather, the Third Circuit was applying Pennsylvania law --- and hewing, as required, to the definition of "surface water" laid down by the Pennsylvania Supreme Court.

13

Moreover, there is no suggestion in T.H.E. Ins. Co. that there is something logically necessary about borrowing --- such that courts must <u>always</u> import the understanding of "surface water" as developed in the land-use context, and use it to define that term whenever it appears in an insurance contract.

\* \* \*

Bottom line: the Defendant's counterarguments do not move the needle.  The insurance contract language in Villamil was markedly different than the language in play here.  See Part III.B.1.  And in T.H.E. Ins. Co., the Third Circuit did not apply a flood exclusion --- and in following Pennsylvania law as to the meaning of "surface water," it did not purport to suggest how that term should be understood under New Jersey law.  See Part III.B.2.

    C.    **"Surface Water"**

With an understanding of the role "surface water" has sometimes played in this area, <u>see</u> Part III.B.2, come back to a point briefly alluded to above, in footnote six.

Namely: under the Flood Exclusion, a flood is "the overflow of surface water, waves, tides, tidal waves, streams, or other bodies of water, or their spray, all whether driven by wind or not."  On the Court's interpretation of the Exclusion, "surface water" is a catch-all term for the various types of on-the-surfaced "bodies of water" --- a lake, for example, or a brook.  <u>See</u> footnote six.

As set out below, this interpretation of "surface water" is well-grounded in New Jersey law.  And that is one more reason to conclude the Court's overall interpretation of the Flood Exclusion is the correct one.

The stepping-off point here is Sosa v. Massachusetts Bay Ins. Co., 458 N.J. Super. 639 (N.J. Super. Ct. App. Div. 2019).

In that case, an intermediate appellate court in New Jersey interpreted "surface water" as a matter of New Jersey law in an insurance contract in which the term, as here, was not defined.

Sosa quoted the same land-use law definition of "surface water" that T.H.E. Ins. Co. relied on.  "[S]urface waters are those which fall on the land from the skies . . . and, follow[] no defined course or channel[.]"  Sosa, 458 N.J. Super. at 650

14

(quoting Nathanson v. Wagner, 118 N.J. Eq. 390, 393 (Ch. 1935)) (cleaned up).

But Sosa also noted that there is another way to think about the meaning of "surface water." Per Sosa, in some contemporary statutes "surface water" has been given a different meaning. Not water that "fall[s] . . . from the skies" and then flits about on land, "following no defined course or channel." Nathanson, 118 N.J. Eq. at 393. But essentially the opposite: a "permanent" body of water that sits on the land --- like a lake or a river. See Sosa, 458 N.J. Super. at 650 ("'[s]urface water' has been defined to possess a permanent nature, akin to a body of water," and citing various statutes for this definition).

Against this backdrop, Sosa determined that the two above-described ways of reading "surface water" suggested that the term is ambiguous --- and Sosa opted to construe "surface water" in the second way. See id.

This conclusion directly buttresses the Court's approach to the Flood Exclusion.

As noted, the Court's interpretation of the Flood Exclusion implies a particular understanding of "surface water" --- as a catch-all term for on-the-surface bodies of water, like lakes or ponds. See footnote six. And that is closely similar to Sosa's understanding --- that "surface water[]" is water of "a permanent nature, akin to a body of water." See Sosa, 458 N.J. Super. at 650.

In turn, Sosa is strongly suggestive of how the New Jersey Supreme Court would see things. See generally Spence, 623 F.3d at 216 (describing the need to predict how state supreme court will rule).

First, because Sosa is a decision issued by an intermediate appellate court, and that is typically a solid look-out point from which to predict how a state supreme court will rule. See Navigators Specialty Ins. Co., 2024 WL 3287848, at *5; Schulman v. Zoetis, Inc., 684 F. Supp. 3d 275, 278 (D.N.J. 2023); see also, e.g., Tryp Hotels Worldwide, Inc. v. Sebastian Hotel, LLC, 2024 WL 1327311, at *9-10 (D.N.J. Mar. 28, 2024); Pinkston v. City of Jersey City, 2023 WL 6888265, at *6 (D.N.J. Oct. 18, 2023).

15

Second, because <u>Sosa</u> construed ambiguity in favor of coverage and the insured, as required by the New Jersey Supreme Court. <u>See</u> footnote seven; <u>see</u> <u>generally</u> <u>Schulman</u>, 684 F. Supp. 3d at 279-81 (holding that there is especially strong reason to base a state supreme court prediction on an intermediate appellate decision when that decision uses the same interpretive approach as the supreme court).

And third, because <u>Sosa</u> opted for a plain-language understanding of "surface water," not a technical, term-of-art understanding --- imported, unannounced, from another body of law. Insureds can hardly expect to see that coming when they read two ordinary-sounding words, "surface water," in their insurance contract. <u>See</u> <u>generally</u> <u>Kievit</u> v. <u>Loyal Protective Life Ins. Co.</u>, 34 N.J. 475, 482 (1961) ("When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded to the full extent that any fair interpretation will allow.") (cleaned up); <u>cf</u>. <u>Zacarias</u>, 168 N.J. at 601 (noting that New Jersey courts will even "depart from the literal text and interpret it in accord[] with the insured's understanding" if the insurance contract "cannot be understood without employing subtle or legalistic distinctions"); <u>see</u> <u>generally</u> <u>Schulman</u>, 684 F. Supp. 3d at 279-81.

All of this adds up.

Given the above, the Court predicts that the New Jersey Supreme Court would hold, like <u>Sosa</u>, that "surface water," as used without definition in an insurance contract, means an on-the-surface body of water. This is the definition of "surface water" implicitly built into the Court's interpretation of the Flood Exclusion. <u>See</u> footnote six. There is, in short, close dovetailing between (a) the predicted approach of the New Jersey Supreme Court and (b) this Court's approach. And this supplies an added reason, beyond those set out in Part III.A, to interpret the Flood Exclusion as the Court does here.

## <u>IV.</u>   <u>Conclusion</u>

The Defendant's motion for summary judgment is denied.

\* \* \*

16

It is on this 29th day of July, 2024 **SO ORDERED.**

_____
Michael E. Farbiarz, U.S.D.J.

17